**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

ESSEX INSURANCE COMPANY,

      Petitioner,

v.

LUERON DIXON,
LAURIS BOULANGER, INC.,
DANIA DISTRIBUTION CENTRE, LTD.,
DANIA DISTRIBUTION CENTRE
CONDOMINIUM ASSOCIATION, INC., and
DANIA DISTRIBUTION CENTRE, INC.

      Respondents

_____/

FILED by _VT_ D.C.
ELECTRONIC

**Nov. 3, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

CASE NO.:

## 09-CV-61755-Dimitrouleas-Snow

## PETITION FOR DECLARATORY RELIEF

Petitioner, ESSEX INSURANCE COMPANY ("ESSEX"), a Delaware corporation, by
and through its undersigned attorneys, files this Petition for Declaratory Relief and states:

1.     This is an action for Declaratory Relief pursuant to 28 U.S.C. § 2201.  This
action is derivative of a 2006 state court action brought by LUERON DIXON and
approximately 85 other individuals  against LAURIS BOULANGER, INC., DANIA
DISTRIBUTION CENTRE, LTD., DANIA DISTRIBUTION CENTRE CONDOMINIUM
ASSOCIATION, INC, and DANIA DISTRIBUTION CENTRE, INC, in the Circuit Court of the
17th Judicial Circuit, Broward County, Florida, Case No. 06-05393 CA 09 (the "underlying
action").

–1–

## FACTS REGARDING JURISDICTION AND VENUE

2.     At all material times, ESSEX is and was a Delaware corporation with its principal place of business in Wilmington, Delaware.

3.     At all material times, ESSEX is and was a surplus lines insurer which has been made eligible by the Department of Financial Services to issue insurance coverage under Florida's Surplus Lines Law.  See Fl. Stat. § 626.901 et seq.

4.     Upon information and belief, at all material times LAURIS BOULANGER, INC. is and was a Florida corporation, authorized to do business in, and presently doing business in, Broward County, Florida.

5.     Upon information and belief, at all material times DANIA DISTRIBUTION CENTRE, LTD. is and was a Florida corporation authorized to do business in, and presently doing business in, Broward County, Florida.

6.     Upon information and belief, at all material times DANIA DISTRIBUTION CENTRE CONDOMINIUM ASSOCIATION, INC. is and was a Florida corporation authorized to do business in, and presently doing business in, Broward County, Florida.

7.     Upon information and belief, at all material times DANIA DISTRIBUTION CENTRE, INC. is and was a Florida corporation authorized to do business in, and presently doing business in, Broward County, Florida.     (Respondents LAURIS BOULANGER, INC., DANIA DISTRIBUTION CENTRE, LTD., DANIA DISTRIBUTION CENTRE CONDOMINIUM ASSOCIATION, INC., and DANIA DISTRIBUTION CENTRE, INC. are referred to herein collectively as "DANIA").

8.     Upon information and belief, at all material times Respondent LUERON DIXON and the other approximately 85 underlying plaintiffs are and were residents of

–2–

Broward County, Florida. The underlying plaintiffs are referred to herein collectively as "DIXON." Upon information and belief, all of the underlying plaintiffs were represented by the same counsel. Also upon information and belief, all of the underlying plaintiffs will be represented by the same counsel in this action. Therefore, in the interest of judicial economy ESSEX has named LUERON DIXON as a representative underlying plaintiff. Service upon LUERON DIXON and/or her counsel shall serve as constructive notice of this action as to all other underlying plaintiffs.

9.      The amount in controversy exceeds the sum of $75,000 exclusive of interest, attorney fees and costs, as DIXON and DANIA entered into a settlement of the underlying action in the amount of $19,000,000.00. This Court has diversity jurisdiction by virtue of 28 U.S.C. § 1332.

10.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(a) because at least one Respondent resides within the district, and because a substantial part of the events giving rise to the claim occurred in the district.

## GENERAL ALLEGATIONS

11.      On or about May 1, 2002, ESSEX issued a commercial general liability policy to DANIA DISTRIBUTION CENTRE, LTD. with  Policy No. 3CG8151 and effective dates from May 1, 2002 to November 1, 2002. A copy of the Policy is submitted as Exhibit A.

12.      In 2006, DIXON sued DANIA in the underlying action and pled causes of action in negligence, nuisance, trespass and violation of Florida Statute §376.313, also known as "Pollutant Discharge Prevention and Control Act." For all purposes relevant to this declaratory action, the Second Amended Complaint is the operative underlying complaint.  A representative excerpt from DIXON's Second Amended Complaint is

–3–

submitted as Exhibit B. The entire, 462-page Second Amended Complaint will be filed electronically with the Court.

13.     There were two categories of underlying plaintiffs. DIXON and many others were landowners neighboring real property owned by DANIA. Others were construction workers who had performed work on the real property owned by Dania. Each of the underlying plaintiffs alleged in the underlying action that they had suffered bodily injury, property damage and/or the loss of the use and enjoyment of their real property as a result of pollutants allegedly dispersed and discharged from the DANIA property, which had been a landfill.

14.     Although the underlying action was filed in 2006 and the Second Amended Complaint was filed in January, 2007, ESSEX was not given notice of the underlying action until November 29, 2007.

15.     The ESSEX policy provides commercial general liability coverage under Section I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, in pertinent part as follows:

> 1.     **Insuring Agreement**
>
>> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

16.     The policy contains the following Pollution exclusion under Coverage A:

> f.     **Pollution**
>
>> (1)     "Bodily injury" or "property damage" arising our of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".:

–4–

(a)   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  Howeve, this supparagraph does not apply to:

    (i)   Bodily injury" if sustained within a building and causedby smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii)   "Bodily injury" or property damage" for which you may be held liable, if you are a contractor and the owner of lessee of such a premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or locations is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional in-sured; or

    (iii)   "Bodily Injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person organization for whom you may be legally responsible; or

(d)   At or from any premises, site or location on which any insured or any contractors or subcontractor working directly or indirectly on any insured behalf are preforming operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i)   "Bodily Injury" or property damage" arising out of the escape of fuels, lu-

−5−

bricants or other operatingfluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment' or its other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arise out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fluids are brought on or to the premises, site or locations with the intent that they be discharged, depersed or release as part of the operations being performed by such insured, contractor or subcontractor;

(ii)   "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontravtor; or

(iii)   "Bodily injury" or "property damage" arising our of heat, smoke or fumes from a "hostile fire".

(e)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2)   Any loss, cost or expense arising out of any:

(a)   request, demand, order or statutory or regulatory requirement that any insured or other test for, monitor, clean up, remove, contain treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants", or

(b)   Claim or suit by or on behalf of a governmental authority for damages be-

—6—

cause of testing for monitoring, cleaning up, removing, containing, treating, de-ioxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement; or such claim or "suit" by or on behalf of a govern-mental authority.

17.    The policy also provided coverage under Section I COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABLITY, which, in part states:

1.    **Insuring Agreement**

a.    We will pay those sums that the insured be-comes legally obligated to pay as damages be-cause of "personal and advertising injury" to which this insurance applies ...

18.    Under COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY it contains the following relevant Exclusion:

2.    **Exclusions**

This insurance does not apply to:

a.    "Personal and advertising injury":

****

(10)    Arising out of the actual, allegd or threat-ened discharge, dispersal, seepage, migra-tion, release or escape of "pollutants" at any time.

b.    Any loss, cost or expense arising out of any:

(1)    Request, demand or order that any insured or others test for, monitor, clean up, re-move, contain, treat, detoxify or neutralize, or in any way respond to, or assess the ef-

–7–

fects of, "pollutants", or

   (2)    Claim or suit by or on behalf of a govern-
mental authority for damages because of
testing, monitoring cleaning up, remov-
ing, containing, treating, detoxifying or neu-
tralizing, or in any way responding to, as-
sessing the effects of, "pollutants"

19.    Under SECTION V – DEFINITIONS of the policy, it contains the following

definition for "Bodily injury":

   **3.**    "Bodily injury" means bodily injury, sickness or
disease sustained by a person, including death death re-
sulting from any of these at any time.

20.    The policy defines "Personal and Advertising Injury", under SECTION V –

DEFINITIONS, as follows:

   **14**.    "Personal injury and advertising injury" means injury, including consequential
"bodily injury," arising out of one or more of the following offenses:

   a.    False arrest, detention or imprisonment;
   b.    Malicious prosecution;
   c.    The wrongful eviction from, wrongful entry into, or
invasion of the right of private occupancy of a
room, dwelling or premises that a person occupies
by or on behalf of its owner, landlord or lessor,
   d.    Oral or written publication of material that slanders
or libels a person or organization or disparages a
person's or organization's goods, products or
services;
   e.    Oral or written publication of material that violates
a person's right of privacy;
   f.    the use of another's advertising idea in your
"advertisement" or
   g.    infringing upon another's copyright, trade dress
or slogan in your "advertisement."

21.    SECTION V – DEFINITIONS under the policy contains the following

definition for "Pollutants":

   **15**.    "Pollutants" means any solid, liquid, gaseous or
thermal irrantant or contaminant, including smoke,
vapor, soot, fumes, acids, alkalis, chemicals and
waste. Waste includes amterials to be recycled,

–8–

reconditioned or reclaimed.

22.     SECTION V – DEFINITIONS   under the policy contains the following

definition for "Property damage":

17.   "Property damage" means:

a.   Physical injury to tangible property, including all
resulting loss of use of that property.  All such
loss of use shall be deemed to occur at the
time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not
physically injured.  All such loss of use shall be
deemed to occur at the time of the "occur-
rence" that caused it.

23.     The policy contains a COMBINATION GENERAL ENDORSEMENT [M/E-

001(4/00)] which states as follows:

Under 2. Exclusions, f. Pollution, Commercial General Liability Coverage Form, Section I. –Coverages,
pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor
any obligation to share damages with or repay anyone else who must pay damages from same in conjunction
with occurrences arising or alleged to have arising out of same.  All liability and expenses arising out of or
related to any form of pollution, whether intentional or otherwise and whether or not resulting injury damage,
devaluation, cost or expense is expected by any insured or any other person or entity is excluded throughout
this policy.  All wording is replaced by the following:

(A)   "Bodily injury, " Personal Injury," "Property Damage," or Damages for the devaluation of
property, or for taking use or acquisition or interference with the rights of others in or on
property or air space, or any other type injury or expense; or

(B)   Any loss, cost, expense, fines and or penalties arising out of any (1) request demand, order,
governmental authority or directive or that any private party or citizen action that any insured,
or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any
way respond to or assess same the effects of pollutants, environmental impairments,
contaminants or (2) any litigation or administrative procedure in which any Insured or others
may be involved as a party as a result of actual, alleged or threatened discharge, dispersal,
seepage, migration, release, escape or placement of pollutants, environmental impairments,
contaminants into or upon land, premises, buildings, the atmosphere any water course, body
of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and
regardless of when.

24.     This COMBINATION GENERAL ENDORSEMENT  contains the following

 definition of "Pollutants" :

"Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical or magnetic irritant
or contaminant, including smoke, vapor, soot, fumes, fibers, radiation, acids, alkalis, petroleums,
chemicals and waste.  Waste includes medical waste and all other materials to be disposed of, recycled,
stored, reconditioned or reclaimed.

–9–

25.    This COMBINATION GENERAL ENDORSEMENT also contains the following

provisions concerning Asbestos, Lead and Silica Dust :

Asbestos, Lead and Silica Dust is not covered under this policy, nor are any expenses nor any obligations to sharedamages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:

    (A)    "Bodily Injury", Personal Injury, " Prperty Damage or damages of any type arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead or silica dust in any form, or from any goods, products or structures containing same, or "Property Damage" or devaluation of property arising from any form of same; or

    (B)    Existence of asbestos, silica dust or lead, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

    (C)    Any supervision, instructions, recommendations, requests, warnings or advise given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, contain, treat, detoxify, neutralize, or disposal of same or in any way respond to or assess the effects of same.

26.    This Asbestos, Lead and Silica Dust provision of the COMBINATION

GENERAL ENDORSESEMENT was amended under Amendment to M/E-001 to state

as follows:

It is hereby understood and agreed that Items 5 of either M/E-001 (4/00) or M/E-001 (4/99) is amended to read as follows:

    5.    Asbestos, Lead Silica Dust, Mold, Bi-organic Growth or Mildew are not covered under this policy,  nor are any expenses not are any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:

        (a)    "Bodily injury, " Personal injury, " "Property Damage or damages of any type , arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead, silica dust, mold bio-organic growth or mildew in any form, or from any goods, products or structures containing same; or

        (b)    Existence of asbestos, lead, silica dust, mold, bio-organic growth or mildew, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

        (c)    Any supervision, instructions, recommendations, requests or warnings or advise given or which should have been given, as well any cost, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, disposal of same or in any way respond to assess the effects of

–10–

same.

27. Further, the policy contains, under ENDORSEMENT A, a

CONSTRUCTION OPERATIONS EXCLUSION which provides as follows:

THE COVERAGE UNDER THIS POLICY DOES NOT APPLY TO "BODILY INJURY", "PROPERTY
DAMAGES", "PERSONAL INJURY", "ADVERTISING INJURY", OR ANY INJURY LOSS OR
DAMAGE ARISING OUT OF OR CAUSED BY CONSTRUCTION OPERATIONS ON THE PROPERTY
OF THE INSURED LISTED ON THE POLICY.

28. In addition, the policy provides conditions precedent that must be met by

the insured, including under SECTION IV – COMMERCIAL GENERAL LIABILITY

CONDITIONS, 2(b.), which states:

> If a claim is made or suit is brought against
> any insured, you must:
>
> (1)   Immediately record the specifics of the
>        Claim or suit and date received; and
>
> (2)   Notify us as soon as practicable

29. ESSEX is in doubt of its rights under the policy and, by this Petition, seeks a

declaration of its rights and obligations with respect to the underlying action and a finding

by this Court that under the above-referenced policy of insurance, ESSEX had no duty to

defend or indemnify any insured or purported insured in connection with the underlying

action because coverage is precluded by one or more of the above exclusions, and/or

because coverage has been forfeited as a result of the insured(s) failing to comply with the

notice conditions of the policy.

30. There exists a bona fide actual present and practical need for the declaration

of coverage available under the policy, and the rights and obligations of ESSEX.

31. There exists a present ascertained or ascertainable state of facts or present

controversy as to a state of facts concerning the rights and obligations of ESSEX

–11–

under the policy.

32.     The rights and obligations of ESSEX under the policy are dependant upon

the facts and the law applicable to the facts affecting coverage under the policy.

33.     ESSEX and each of the Respondents have an actual, present controversy in

the subject matter described herein.

34.     All proper and present interests are before the Court by proper process.

35.     All conditions precedent to the initiation and maintenance of this action have

been complied with, have occurred, or have been waived.

WHEREFORE, Petitioner, ESSEX respectfully requests this to Court enter a

judgment Declaring that:

A.     ESSEX had no duty to defend any insured or purported insured
in the underlying action.

B.     ESSEX has no duty to indemnify any insured or purported
insured as to any verdicts, judgments, or settlements in the underlying
action.

C.     ESSEX further requests judgment for its costs and disbursements
incurred herein and for such other relief as may be warranted.

John R. Catizone
Florida Bar No. 0695491
LITCHFIELD CAVO LLP
600 Corporate Drive, Suite 600
Fort Lauderdale, FL 33334
Office: (954) 689-3000
Fax: (954) 689-3001
Email: catizone@litchfieldcavo.com

David C. Dunham
Florida Bar No. 989990
LITCHFIELD CAVO LLP
Email: papp@litchfieldcavo.com
600 Corporate Drive, Suite 600
Fort Lauderdale, FL 33334
Office: (954) 689-3000
Fax: (954) 689-3001
Email: dunham@litchfieldcavo.com

–12–

**MARKEL**          **ESSEX INSURANCE COMPANY**

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number  3CG8151

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $  2,000,000 |
| Products/Completed Operations Aggregate Limit | $  EXCLUDED |
| Personal and Advertising Injury Limit | $  1,000,000 |
| Each Occurrence Limit | $  1,000,000 |
| Fire Damage Limit | $  50,000  any one fire |
| Medical Expense Limit | $  1,000  any one person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of business:

☐ Individual    ☐ Joint Venture    ☒ Partnership    ☐ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

100 BLOCK OF SOUTHWEST 12TH AVENUE
DANIA, FL  33004

### PREMIUM

| Classification | Code No. | *Premium Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| VACANT LAND-OTHER THAN NOT-FOR-PROFIT. | 49451 | t) 4. | FLAT | CHARGE | $ | $  650.00 |
| ADDITIONAL INSURED | | | FLAT | CHARGE | | 100.00 |

EXHIBIT
A

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

TOTAL ADVANCE PREMIUM $  750.00

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:
011-1054(4-00), 011-1095(07-01), 011-1009(7-80), ME-001(4-00), ME-001A(07-01), ME-009(4-99), ME-039(4-99), ME-048(4-99),
ME-064(4-99), ME-143(4-99), ME-173(4-99), CG 00 01 (07-98), CG 21 44 (07-98)

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY
CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.
011-1061 (8-94)

COMPANY

**ESSEX INSURANCE COMPANY**

MARKEL

## COMMERCIAL LIABILITY DECLARATIONS

NEW
Renewal of Number

**Policy Number**
3CG8151

**Item 1. Named Insured and Mailing Address:**
DANIA DISTRIBUTION CENTERE, LIMITED
A LIMITED FLORIDA PARTNERSHIP
1986 NORTHEAST 149TH STREET
NORTH MIAMI, FL 33181

**Item 2. Policy Period** From: 05/01/2002 To: 11/01/2002 Term: 6 MONTHS
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3.** Retroactive Date: N/A

**Item 4.** Business Description: VACANT LAND

**Item 5.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment. NO FLAT CANCELLATION

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | CG0001 7/98 | $ 750.00 |
| Professional Liability Coverage Part | | $ |
| | | $ |
| | | $ |
| | ADM. FEE | $ 35.00 |
| | INSPECTION FEE | $ 100.00 |
| | S/L TAX | $ 44.25 |
| | SERVICE FEE | $ 2.66 |
| Audit Period Annual unless otherwise stated: | Total | $ 931.91 |

**Item 6.** Forms and endorsements applicable to all Coverage Parts: 011-1054(4-00), 011-1061(8-94)
SHOW NUMBERS

CG2168 01/02

Agent Name and Address: GRESHAM & ASSOCIATES, INC.
Agent Number: 101822

Countersigned 05/16/2002 BJV By
DATE

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

18 PI 5056 (9-93)
COMPANY

# ESSEX INSURANCE COMPANY

MARKEL

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

## ESSEX PRIVACY NOTICE

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms; and/or
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from a consumer reporting agency; and/or
- Information we receive from Inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Financial service providers, such as insurance agents and/or brokers.

We may also disclose nonpublic personal information about you to non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

AUTHORIZED REPRESENTATIVE          DATE

011-1095 (7/01)



# ESSEX INSURANCE COMPANY

**MARKEL**

# ENDORSEMENT

A

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

## CONSTRUCTION OPERATIONS EXCLUSION

THE COVERAGE UNDER THIS POLICY DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", "ADVERTISING INJURY", OR ANY INJURY LOSS OR DAMAGE ARISING OUT OF OR CAUSED BY CONSTRUCTION OPERATIONS ON THE PROPERTY OF THE INSURED LISTED ON THIS POLICY.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

GRESHAM & ASSOCIATES, INC.

AUTHORIZED REPRESENTATIVE

**ESSEX INSURANCE COMPANY**

MARKEL

# ENDORSEMENT

1

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

IN CONSIDERATION OF THE PREMIUM CHARGED AT INCEPTION, IT IS HEREBY
UNDERSTOOD AND AGREED THE FOLLOWING FORMS ARE ADDED TO THE POLICY:

1. ANIMAL EXCLUSION ENDORSEMENT M/E-023.

2. ASSAULT AND/OR BATTERY EXCLUSION M/E-024.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

GRESHAM & ASSOCIATES, INC.

BJV    06/13/02

In Witness Whereof, the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                COMPANY

**MARKEL**

## ESSEX INSURANCE COMPANY

# COMBINATION GENERAL ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *Attached to and Forming Part of Policy No. | *Effective Date of Endorsement | *Issued to |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

THIS ENDORSEMENT CHANGES THE POLICY.

Employer's Liability under 2. E. Exclusions, Commercial General Liability Coverage Form, Section I. - Coverage, is replaced by the following and applies throughout this policy:
This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to

(1)     any employee of a Named Insured arising out of and in the course of employment or while performing duties related to the conduct of the insured's business; or

(2)     the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).

This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract."

Wherever the word "employee" appears above, it shall also mean any member, associate, leased worker, temporary worker or any person or persons loaned to or volunteering services to you.

With respect to any "auto", under 2. Exclusions, g. Aircraft, Auto or Watercraft, Commercial General Liability Coverage Form, Section I. Coverages, the first paragraph is replaced by the following and applies throughout this policy:
This insurance does not apply to "bodily injury" or "property damage" arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any "auto." Use includes operation and "loading and unloading."

Employment-Related Practices Exclusion is added to Coverages A and B, Section I, Commercial General Liability Coverage Form and to any other coverage under this policy as follows:
Employment-Related Practices regardless of allegations are not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:

(A)     Refusal to employ or Termination of Employment; or

(B)     Discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment-related practices, policies, acts or omissions; or

(C)     Consequential "Bodily Injury" or "Personal Injury" as a result or (A) and (B).

Under 2. Exclusions, f. Pollution, Commercial General Liability Coverage Form, Section I. - Coverages, Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout this policy. All wording is replaced by the following:

(A)     "Bodily Injury," "Personal Injury," "Property Damage," or Damages for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

(B)     Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess same the effects of pollutants, environmental impairments, contaminants or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

M/E-001 (4/00)

Page 1 of 2

COMPANY

Pollutants mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

Asbestos, Lead or Silica Dust is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:

    (A) "Bodily Injury," "Personal Injury," "Property Damage" or Damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead or silica dust in any form, or from any goods, products or structures containing same, or "Property Damage" or devaluation of property arising from any form of same; or

    (B) Existence of asbestos, silica dust or lead, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

    (C) Any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, contain, treat, detoxify, neutralize, or disposal of same or in any way respond to or assess the effects of same.

Punitive or Exemplary Damages is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same. (Exception: This does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.)

Discrimination charges, of any kind, actual and alleged, are not covered under this policy, nor any expenses or obligation to share damages with or repay another whom must pay from same.

If you are a contractor, builder or developer, there is no coverage under this policy for:

(1)    "Bodily injury," "personal injury" or "property damage" caused by acts of independent Contractors/subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of at least like coverage and limits of liability as provided by this policy and naming you as an additional insured.

(2)    "Bodily injury," "personal injury" or "property damage" sustained by any independent contractor/ subcontractor, or any employee, leased worker, temporary or volunteer help of same, unless a Named Insured or employee of a Named Insured is on site, at the time of the injury or damage, and the Named Insured's actions or inactions are the direct cause of the injury or damage, or the injury or damage is directly caused by an employee of the Named Insured.

Professional Liability, Malpractice, Errors, Omission, Acts of any type including rendering or failure to render any type professional service is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, unless such coverage is specifically endorsed onto this policy.

).     Duty to Defend: Where there is no coverage under this policy, there is no duty to defend.

 **ESSEX INSURANCE COMPANY**

# ENDORSEMENT

\* *Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| \*ATTACHED TO AND FORMING PART OF POLICY NO. 3CG8151 | \*EFFECTIVE DATE OF ENDORSEMENT 05/01/2002 | \*ISSUED TO DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |
|---|---|---|

**THIS ENDORSEMENT CHANGES THE POLICY.**

## Amendment to M/E-001

It is hereby understood and agreed that Item 5 of either M/E-001(4/00) or M/E-001(4/99) is amended to read as follows:

5.  Asbestos, Lead, Silica Dust, Mold, Bio-organic Growth or Mildew are not covered under this policy, nor are any expenses nor are any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:

    (a) "Bodily Injury," "Personal Injury," "Property Damage" or Damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead, silica dust, mold, bio-organic growth or mildew in any form, or from any goods, products or structures containing same; or

    (b) Existence of asbestos, lead, silica dust, mold, bio-organic growth or mildew, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

    (c) Any supervision, instructions, recommendations, requests, or warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way respond to assess the effects of same.

_____ /
AUTHORIZED REPRESENTATIVE            DATE

M/E-001A (7/01)



## ESSEX INSURANCE COMPANY

## ADDITIONAL INSURED ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

### THIS ENDORSEMENT CHANGES THE POLICY.

SECTION II - WHO IS AN INSURED of the Commercial General Liability Form is amended to include:

Person or Entity:
SUNTRUST BANK, A GEORGIA CORPORATIONS, ISAOA
777 BRICKEL AVENUE
MIAMI, FL  33131

Interest of the Above:

as an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy.

It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured.

Moreover, it is agreed that no coverage shall be afforded to the above-identified additional insured for any "bodily injury," "personal injury," or "property damage" to any employee of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury.

Additional Premium:

INCLUDED

_____  /
AUTHORIZED REPRESENTATIVE   DATE

M/E-009 (4/99)

COMPANY

 **ESSEX INSURANCE COMPANY**

MARKEL

## CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

**THIS ENDORSEMENT CHANGES THE POLICY.**

Definition of "insured contract" under this policy is replaced by the following:

"Insured Contract" means any written:

1.  Lease of premises; or
2.  Easement agreement except in connection with construction or demolition operations on or adjacent to a railroad; or
3.  Indemnification of a municipality as required by ordinance, except in connection with work for the municipality; or
4.  Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade; or
5.  Elevator maintenance agreement.

An "Insured Contract" does not include that part of any contract or agreement that indemnifies any person or organization for damage by fire to premises rented or loaned to you.

_____ /_____
AUTHORIZED REPRESENTATIVE        DATE



# ESSEX INSURANCE COMPANY

## DEDUCTIBLE ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

**THIS ENDORSEMENT CHANGES THE POLICY.**

## SCHEDULE

| Coverage | Amount and Basis of Deductible |
|---|---|
| If provided by this policy:<br>Bodily Injury, Property Damage, Professional or Personal and Advertising Injury Liability | $ 1,000.00        Per Claim |
| Exception:<br>_____ | $                     Per Claim |

☐ If this box is so marked, the basis of deductible is amended to apply 'on a per item per claim' property damage deductible basis.

1. Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2. The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3. The terms of this insurance, including those with respect to:
   (a)   Our right and duty to defend any "suits" seeking those damages; and
   (b)   Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____   /_____
AUTHORIZED REPRESENTATIVE          DATE

M/E-048 (4/99)                    COMPANY



# ESSEX INSURANCE COMPANY

## DATE RELATED/DATE SENSITIVE/YEAR 2000 COMPUTER RELATED FAILURES AND OTHER ELECTRONIC PROBLEMS EXCLUSION

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

**THIS ENDORSEMENT CHANGES YOUR POLICY AND APPLIES TO ALL COVERAGES UNDER THIS POLICY.**

Year 2000 Computer-Related, and/or all date related failure(s) or date sensitive calculations which result in failure(s) and Other Electronic Problems are not covered under this policy, nor any consequential damages resulting therefrom, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, as a result of

(A) any actual or alleged failure, malfunction or inadequacy of, whether belonging to an Insured or to others, computer hardware, including microprocessors (computer chips) whether a part of any computer system or not, computer application software, computer operating systems and related software, computer networks, any other computerized or electronic equipment or components, or any other products, and any services, data or functions that directly or indirectly use or rely upon in any form or manner any of the foregoing items, due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond dates, and/or all date related failure(s) or date sensitive calculations which result in failure(s) and

(B) this applies as well to any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you, or by an independent or sub-contractor, to determine, rectify or test for any potential or actual problems in regard to the foregoing.

This exclusion does not apply to "bodily injury" occurring on the premises insured hereunder owned by or rented to you.

_____  /  _____

AUTHORIZED REPRESENTATIVE        DATE

M/E-064 (4/99)

COMPANY



# ESSEX INSURANCE COMPANY

**MARKEL**

## MINIMUM EARNED PREMIUM ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

**THIS ENDORSEMENT CHANGES THE POLICY.**

If this insurance policy is cancelled at your request, there will be a Minimum Earned Premium retained by us of $ 375.00 ____ or ____ 50 ____ %(per cent) of the premium, whichever is the greater. Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

_____ /
AUTHORIZED REPRESENTATIVE        DATE



## ESSEX INSURANCE COMPANY

# PRODUCTS / COMPLETED OPERATIONS HAZARD EXCLUSION

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CG8151 | 05/01/2002 | DANIA DISTRIBUTION CENTERE, LIMITED A LIMITED FLORIDA PARTNERSHIP |

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

This Insurance does not apply to "bodily injury" or "property damage" included within the "products/completed operations hazard."

_____ / _____
AUTHORIZED REPRESENTATIVE          DATE

M/E-173 (4/99)

COMPANY

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   **(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** That the insured would have in the absence of the contract or agreement; or

   **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

     **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**CG 00 01 07 98** Copyright, Insurance Services Office, Inc., 1997 **Page 1 of 13** ☐

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997    **CG 00 01 07 98**    □

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:
(a) Less than 26 feet long; and
(b) Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**CG 00 01 07 98**   Copyright, Insurance Services Office, Inc., 1997   **Page 5 of 13**   □

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage **A.**

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997   **CG 00 01 07 98**   □

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

  **(1)** "Bodily injury" or "personal and advertising injury":

    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

    **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

    **(d)** Arising out of his or her providing or failing to provide professional health care services.

  **(2)** "Property damage" to property:

    **(a)** Owned, occupied or used by,

    **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

Copyright, Insurance Services Office, Inc., 1997

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C**;

b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage **A**; and

b. Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997    **CG 00 01 07 98**    □

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

CG 00 01 07 98          Copyright, Insurance Services Office, Inc., 1997          **Page 9 of 13**     □

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997   **CG 00 01 07 98**   □

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in **a.** above; or

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

CG 00 01 07 98 Copyright, Insurance Services Office, Inc., 1997 **Page 11 of 13** □

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Your product" means:

    **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(1)** You;

        **(2)** Others trading under your name; or

        **(3)** A person or organization whose business or assets you have acquired; and

    **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21.** "Your work" means:

    **a.** Work or operations performed by you or on your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **b.** The providing of or failure to provide warnings or instructions.

**CG 00 01 07 98** Copyright, Insurance Services Office, Inc., 1997 **Page 13 of 13**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CG 21 44 07 98

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective 05/01/2002 | 12:01 A.M. standard time | Policy No. 3CG8151 |
|---|---|---|
| Named Insured<br>DANIA DISTRIBUTION CENTERE, LIMITED<br>A LIMITED FLORIDA PARTNERSHIP | | Countersigned by |

(Authorized Representative)

## SCHEDULE

**Premises:** 100 BLOCK OF SOUTHWEST 12TH AVENUE
      DANIA, FL  33004

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.  The project shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1997

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION

CASE NO.: 06-05393 CA 09

LUERON DIXON, DEBORAH WALLACE, individually, and as parent or natural guardian of L. W., a minor, Key. W., a minor, J. W., a minor, and Kei. W., a minor, RAYNARD WALLACE, LOUIS LEWIS, individually, and as parent or natural guardian of J. L., a minor, SANDRA HARRIS, KATRINA HARRIS, WALTER HARRIS, MARY A. BUTLER, WILLIAM FAIRCHILD, JR., DOROTHY F. SAMPSON, MORRIS GOLDWIRE, MARIE PINKNEY, SHERYL ROSS, CANDRA WILLIAMS as parent and natural guardian of T.I., a minor, and CANDRA WILLIAMS, individually, MYRA RUFFIN, LUCIUS BEARD, HARRY JAMES, KAREN DRAYTON, AMARILLA CURE, ALECIA WILLIAMS, CLIFFORD SCOTT, II, BARRY WHITE, CLIFFORD SCOTT, MAGGIE GREEN, CARLEEN BRYANT as parent and natural guardian of L. R., a minor, MABLE FUNCHESS, TIMOTHY FUNCHESS, ALFREDA FUNCHESS, RODULFO RAMOS, DOROTHY JACKSON, RUTHA FUNCHESS, EDDIE FAIRCHILD, BESSIE PINKNEY, ARLESTER FAIRCHILD, SYLVESTER FAIRCHILD, MORRIS WEST, SPENCEENA THOMPSON as personal representative of JACKIE FERGUSON, PATRICK PRICE, JOHANNA PRICE, RUTHA PRICE, JOE PRICE, ARTHUR JONES, ROBERT CHUNN, BARBARA REYNOLDS, KRYSTAL REYNOLDS, IRENE COOPER, TYRONE AIKENS, SUZANNE FUNCHESS, SUZANNE FUNCHESS as parent and natural guardian of C.G., and B.M, SARA SURLES, KIMBERLY MCNEAL, KIMBERLY MCNEAL, as parent and natural guardian of K.P., DANNIE ELLIS, CARLEEN BRYANT, JAMES CURRY, LAURA SANDERS, LAURA B. SANDERS, DONALD GIBBS, LAWRENCE PINKNEY, JESSE HARRIS, CANDACE HARRIS, WANDA PATTERSON, VALERIE TYLER, CLYTIS FAIRCHILD, WILLIAM FAIRCHILD, JR., MICHAEL FAIRCHILD, TOM GRACE, GEORGE FUNCHESS, ARTHUR WILSON, DAPHNE HENRY, SHORLAND BRUTON, WILLIE DELOCH, LEOLA FERGUSON, SHANDRICKA THOMPSON, SHANDRICKA

CLYNE & ASSOCIATES, P.A.
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538



THOMPSON as parent and natural guardian of S. T., J. T., and K. T.,
BOBBIE WALKER, EMMANUEL TEMPLE CHURCH OF GOD
AND CHRIST, AMOS WALKER, ROMAN MEANS, GLORIA
GRACE, GREGORY CAMPBELL, CHARLOTTE WILSON,
and RONALD SCOTT,

      Plaintiffs,

vs.

LAURIS BOULANGER, INC., DANIA DISTRIBUTION
CENTRE, LTD., DANIA DISTRIBUTION CENTRE
CONDOMINIUM ASSOCIATION, INC., and DANIA
DISTRIBUTION CENTRE, INC.

      Defendants.

_____/

## SECOND AMENDED COMPLAINT

Plaintiffs, LUERON DIXON, DEBORAH WALLACE, individually, and as parent or natural

guardian of  L. W., Key. W, J. W., and Kei. W., RAYNARD WALLACE, LOUIS LEWIS,

individually, and as parent or natural guardian of J. L., SANDRA HARRIS, KATRINA HARRIS,

WALTER HARRIS, MARY A. BUTLER, WILLIAM FAIRCHILD, JR., DOROTHY F.

SAMPSON, MORRIS GOLDWIRE, MARIE PINKNEY, SHERYL ROSS, CANDRA WILLIAMS,

individually, and as parent and natural guardian of T. I., a minor, MYRA RUFFIN, LUCIUS

BEARD, HARRY JAMES, KAREN DRAYTON, AMARILLA CURE, ALECIA WILLIAMS,

CLIFFORD SCOTT, II, BARRY WHITE, CLIFFORD SCOTT, MAGGIE GREEN, CARLEEN

BRYANT as parent and natural guardian of L. R., MABLE FUNCHESS, TIMOTHY FUNCHESS,

ALFREDA FUNCHESS, RODULFO RAMOS,  DOROTHY JACKSON, RUTHA FUNCHESS,

EDDIE FAIRCHILD, BESSIE PINKNEY, ARLESTER FAIRCHILD, SYLVESTER FAIRCHILD,

MORRIS WEST, and SPENCEENA THOMPSON as personal representative of JACKIE

**CLYNE & ASSOCIATES, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

FERGUSON, PATRICK PRICE, JOHANNA PRICE, RUTHA PRICE, JOE PRICE, ARTHUR JONES, ROBERT CHUNN, BARBARA REYNOLDS, KRYSTAL REYNOLDS, IRENE COOPER, TYRONE AIKENS, SUZANNE FUNCHESS, SUZANNE FUNCHESS as parent and natural guardian of C.G., and B.M, SARA SURLES, KIMBERLY MCNEAL, DANNIE ELLIS, CARLEEN BRYANT, JAMES CURRY, LAURA SANDERS, LAURA B. SANDERS, DONALD GIBBS, LAWRENCE PINKNEY, JESSE HARRIS, CANDACE HARRIS, WANDA PATTERSON, VALERIE TYLER, SYLVESTER FAIRCHILD, CLYTIS FAIRCHILD, WILLIAM FAIRCHILD, JR., MICHAEL FAIRCHILD, TOM GRACE, GEORGE FUNCHESS, ARTHUR WILSON, DAPHNE HENRY, SHORLAND BRUTON, WILLIE DELOCH, LEOLA FERGUSON, SHANDRICKA THOMPSON, SHANDRICKA THOMPSON as parent and natural guardian of S. T., J. T., and K. T., BOBBIE WALKER, EMMANUEL TEMPLE CHURCH OF GOD AND CHRIST, AMOS WALKER, ROMAN MEANS, GLORIA GRACE, GREGORY CAMPBELL, CHARLOTTE WILSON, and RONALD SCOTT, sues the Defendants LAURIS BOULANGER, INC., DANIA DISTRIBUTION CENTRE, LTD., DISTRIBUTION CENTRE CONDOMINIUM ASSOCIATION, INC., and DANIA DISTRIBUTION CENTRE, INC., and state as follows:

### JURISDICTION

1.      This is an action for damages in excess of $15,000.00, and subject to this court's jurisdiction.

2.      The Plaintiffs are residents of Broward County, Florida.

3.      The Defendant, Dania Distribution Centre, Inc., is a Florida Corporation whose principal place of business is in Broward County, Florida.

4.      The Defendant, Dania Distribution Centre, Ltd., is a Florida Corporation whose

**CLYNE & ASSOCIATES, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538
3

43 of 57

principal place of business is in Broward County, Florida.

5.      The Defendant, Lauris Boulanger, Inc., ("LBI") is a Florida corporation.

6.      The Defendant, Dania Distribution Centre Condominium Association, Inc., is a Florida Corporation, whose principal place of business is in Broward County, Florida.

## FACTUAL BACKGROUND

7.      On or about March of 2001, the land which consists of approximately15 .5 acres of land (hereinafter referred to as "the property") was purchased by the Defendants or representatives thereof.

8.      The property consisting of approximately 15.5 acres of land located, registered, or connected to, but not limited to, the following addresses and folio numbers in Dania, Florida: 71 SW 12th Avenue, 73 SW 12th Avenue, 59 SW 12th Avenue, 35 SW 12th Avenue, 5 SW 12th Avenue, 11 SW 12th Avenue, folio #504233AA0000, folio #504233AA0030, folio #504233AA0150, folio #504233AA0180, folio #504233AA0250, folio #504233AA0260, folio #504233AA0270, folio #504233AA0280, folio #504233AA0390, folio #504233AA0300, folio #504233AA0310, folio #504233AA0320, folio #504233AA0330, folio #504233AA0340, folio #504233AA0350, folio #504233AA0360, folio #504233AA0370, folio #504233AA0380, folio #504233AA0400, folio #504233AA0410, folio #504233AA0430, folio #504233AA0440, folio #504233AA0440.

9.      The parcel of land is bordered on the north and north east by residential homes, commercial buildings to the distant south, commercial buildings and residential homes on the east, and a canal and residential property on the west.

10.      The property was apparently undeveloped prior to 1963.

11.      Between 1971 and 1990 the property was used for dredged sand fill.

12.     Between 1990 and 1995 the dredged area was filled with construction and demolition debris.  During this period medical waste, fuel tanks, gasoline and other petroleum products and various chemicals were dumped on the property.

13.     On or about September of 2003, Dania Distribution Centre, Ltd. applied for permits from the City of Dania Beach to begin construction of a large warehouse complex on the property.

14.     Dania Distribution Centre, Ltd., began clearing the land of debris and preparing the location for construction.

15.     From approximately March of 2001 to the present date the Defendants' actions, including but not limited to, the clearing of the property, preparing it for construction, and construction and development of the property caused the dispersion or discharge of pollutants.

16.     Pursuant to instructions from Lauris Boulanger, Inc., the developer of the property, S.E. Environmental Consultants, Inc.,(SEECI) was hired to complete necessary inspections of the property and prepare the land for construction.

17.     On November 26, 2002, SEECI collected soil samples from the foundation for geochemical assessment by I. A.G. and for geotechnical assessment by Wingerter Laboratories, Inc.

18.     The results of the examination of the soil samples exhibited elevated levels of Copper, Arsenic, Barium, Chromium, Nickel, and Lead.

19.     SEECI informed the Plaintiffs that the presence of Arsenic in the land was approximately 50% of the allowable levels for a commercial property, however the levels were twice the allowable levels for a residential property.

20.     The polluted property was directly adjacent to several residential homes, and located a short distance from residential apartment complexes and other residential homes.

21.    Defendants did not erect any barrier or containment field , or take any other measures to prevent the discharge of pollutants, contaminants or other hazardous substances.

22.    SEECI informed the Defendants that any attempted transport of the material through residential areas "would place an undue risk to the residents."

23.    Groundwater assessments were conducted in 2000 and 2001 at the property through the sampling of existing and accessible temporary monitoring wells located on the site.

24.    The results of the groundwater assessments indicated that contaminant such as Phenols, Benzene, Naphthalene, Methane, Cresols, Hydrogen Sulphide, Ammonia, Antimony, Lead, Gasoline, diesel fuel and chlorinated solvents were present.

25.    SEECI provided several notices and additional information to Plaintiffs of the need to excavate soil from the property due to contamination.

26.    A sewage odor was observed during testing by Nutting Environmental of Florida, Inc.

27.    The Defendants knew of the existence of hazardous chemicals and toxins in the soil, groundwater and materials located within the property.

28.    The Defendants did not contact the Environmental Protection Agency, the Florida Department of Environmental Protection or the Broward County Department of Environmental Protection to report the findings of any hazardous materials or chemicals as required by law.

29.    Several property owners and residents near the property, including the Plaintiffs, complained to the local agents of the property owners and the City of Dania Beach regarding the excessive dust, noise and damage that the construction and discharge of pollutants was causing to their homes and health.

**CLYNE & ASSOCIATES, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538
6

46 of 57

30.     The Plaintiffs developed health problems as a result of their contact with the pollutants and poisons in the dust and particles discharged from the property.

31.     The Plaintiffs complained of and received treatment for several health conditions including, but not limited to, respiratory and sinus problems, skin lesions, rashes, hearing loss, hair loss, and deteriorating eyesight.

32.     The Plaintiffs continued to complain about thick dust and film covering their homes and vehicles and coming into their homes.

33.     In addition to the residential Plaintiffs complaints, several complaints were filed by construction workers who suffered ailments as a result of contact with the soil, water and polluted air at the property.

34.     The construction workers at the site informed the Defendants of the pollutants and other hazardous substances, including the discovery of large portions of asbestos on the property.

35.     The Defendants failed to take any steps toward protecting the residents, visitors, or properties in the area surrounding the property, as well as workers on the property from the spread of toxins, hazardous chemicals or materials.

36.     The Defendants were required by Broward County Department of Environmental Protection to install monitoring wells throughout the property and outside the property walls.

37.     The monitoring wells have identified elevated levels of contaminates in the groundwater throughout the property, outside the walls of the property and encroaching the surrounding residential properties.

38.     The following is a list of some of the chemicals which were discovered on the property: Arsenic, Phenol, Benzene, Benzo(a)pyrene, Naphthalene, Methylphenol, Dimethyphenol,

Pentachlorophenol, Hydrogen Sulphide, Cresols, Antimony, Chromium, Nickel, Zinc, Copper, Methane, Hydrogen Sulphide, Ammonia, Lead, Gasoline, Diesel fuel, Barium, Carbazole, and chlorinated solvents.

39.    Defendant Lauris Boulanger, Inc., is statutorily liable because it caused a discharge or other polluting condition or owned or operated the facility or nonresidential location where a discharge or other polluting condition was caused at the time of the discharge.

40.    Defendant Dania Distribution Centre, Inc., is statutorily liable because it caused a discharge or other polluting condition or owned or operated the facility or nonresidential location where a discharge or other polluting condition was caused at the time of the discharge.

41.    Defendant Dania Distribution Centre, Ltd., is statutorily liable because it caused a discharge or other polluting condition or owned or operated the facility or nonresidential location where a discharge or other polluting condition was caused at the time of the discharge.

42.    Defendant Dania Distribution Centre Condominium Association, Inc., is statutorily liable because it caused a discharge or other polluting condition or owned or operated the facility or nonresidential location where a discharge or other polluting condition was caused at the time of the discharge.

43.    The Plaintiffs suffered physical ailments and illness as a result of contact with the pollutants discharged, emitted, or otherwise released from the property.

44.    Plaintiffs demand a trial by jury on all issues so triable.

## COUNT 1 - NEGLIGENCE
### (Lueron Dixon)

45.    Plaintiff Lueron Dixon, repeats, realleges and incorporates by reference paragraphs

1 through 44 of the Complaint as if fully set forth herein.

46.      All of the Defendants owed the Plaintiff a duty to exercise reasonable care in not releasing, discharging, depositing, and/or transporting toxic chemicals that they knew or should have known could result in property damage and personal injury.

47.      In breaching their duty to exercise reasonable care, the Defendants were negligent in connection with numerous but distinct and separate incidences and occurrences over a period of years in at least, but not limited to, the following respects:

   a.      In releasing, discharging, emitting or otherwise permitting extremely hazardous toxic chemicals from the soil and groundwater at the Dania Distribution Center into the residential neighborhoods surrounding the Dania Distribution Center; Defendants knew or should have known that the extremely hazardous chemicals were being produced, released, emitted, discharged and seeping from the soil and groundwater, but negligently failed to use available technology, procedures and knowledge to prevent and control such releases and discharges;

   b.      In removing or transporting contaminated soil and groundwater from the property that now is the Dania Distribution Center; Defendants knew or should have known that elevated levels of toxic chemicals were contained in the soil and groundwater, but negligently failed to take appropriate, reasonable and necessary action to control and prevent the migration of such chemicals to the Plaintiff's properties and bodies;

   c.      In failing to warn the public generally, and the Plaintiff in particular, of the

**CLYNE & ASSOCIATES, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538
9

toxic contamination, and the migration, emission, or discharge of the chemicals to the Plaintiff's private property increased risk of dangerous latent disease and other personal injuries and property damage;

d.    In failing to promptly remedy the contamination and prevent further migration of toxic chemicals from the property containing the Dania Distribution Center;

e.    In failing to warn the public and the Plaintiff in particular of the migration, emission, release or seepage of toxic contamination into the local groundwater;

f.    In failing to promptly remedy the contamination and further migration of toxic chemicals into the groundwater.

48.    As a direct and proximate result of the Defendants' wrongful acts and omissions over a period of years the Plaintiff, who was the owner of the property located at 1301 W. Dania Beach Boulevard, Dania, FL 33004, suffered injuries for property damage in that her property was contaminated, and it's fair market value was substantially decreased or destroyed.

49.    As a direct and proximate result of the Defendants' wrongful act and omissions the Plaintiff, who resided at 1301 W. Dania Beach Boulevard, Dania, FL 33004, and is a resident and visitor in the adjacent Dania Beach neighborhood  was exposed, over a period of years and on numerous occasions to elevated levels of hazardous toxic chemicals and materials as a result of numerous similar but distinct separate incidences and occurrence.

50.    As a direct and proximate result of these exposures to such hazardous and toxic chemicals and materials, Plaintiff suffered personal injuries.

51.     Plaintiff has standing to pursue a claim against Defendants.

52.     Plaintiff in the past, and in the future will continue to suffer damages, including but not limited to, the following: bodily injuries, pain and suffering, disability, mental anguish, lost capacity for the enjoyment of life, loss of earnings, loss of earning capacity, medical and hospital expenses, loss of bodily functions, and property damage.

WHEREFORE, Plaintiff, Lueron Dixon, demands judgment against Defendants Lauris Boulanger, Inc., Dania Distribution Centre, Ltd., Dania Distribution Centre Condominium Association, Inc., and Dania Distribution Centre, Inc., in an amount in excess of the jurisdictional limits of this Court, together with costs and such other and further relief as the Court may deem just and proper.

### COUNT 2 - PLAINTIFF'S CLAIM FOR DAMAGES
### UNDER FLA. STAT. §376.313
(Lueron Dixon)

53.     Plaintiff, Lueron Dixon, reavers and realleges paragraphs 1-44 and further states as follows:

54.     Plaintiff inhaled, touched, digested, came into contact with or otherwise was exposed to hazardous substances, pollution, pollutants, and/or contaminants emitted, leaked, blown, transferred, seeped, released, dumped, emptied, poured or otherwise discharged from the property now known as the Dania Distribution Center.

55.     Plaintiff had consistent daily exposure to the pollutants discharged or dispersed from the property as she resided 1301 W. Dania Beach Boulevard, Dania, FL 33004.

56.     The substances, chemicals, pollution, pollutants, and other matters which were emitted, leaked, blown, transferred, seeped, released, dumped, emptied, poured or otherwise

**CLYNE & ASSOCIATES, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538
11

51 of 57

discharged from the property now known as the Dania Distribution Center were encompassed within the meaning and protections of Fla. Stat. §376.

57.     The Defendants violated the statute by permitting, causing, or otherwise allowing the substances, chemicals, pollution, pollutants, and other matters to be emitted, leaked, blown, transferred, seeped, released, dumped, emptied, poured or otherwise discharged from the property now known as the Dania Distribution Center.

58.     As a result of Plaintiff's inhalation, digestion, contact or other exposure to the hazardous substances, pollution, pollutants, and/or contaminants emitted, leaked, seeped, blown, transferred, released, dumped, emptied, poured or otherwise discharged from the property now known as the Dania Distribution Center, Plaintiff has suffered and continues to suffer physical damages, including but not limited to, respiratory ailments, skin ailments, pulmonary problems, stomach ailments, deteriorating eyesight, headaches, lymph node problems, hair loss, and allergies

59.     Prior to and since the initiation of development, clearing, preparation and/or construction of the Dania Distribution Center, some form of emissions, leakages, seeping, blowing, releases, transfers, dumping, emptying, pouring or otherwise prohibited discharges of pollutants, contaminants, hazardous substances, petroleum products, petroleum products chemicals of concern, pollutants, and/or pollution have occurred.

60.     Pursuant to Fla. Stat. §376.313(3) Plaintiff has standing to pursue an individual cause of action against Defendants for all damages resulting from the discharge or other condition of pollution.

61.     Plaintiff in the past, and in the future will continue to suffer damages, including but not limited to, the following: bodily injuries, pain and suffering, disability, mental anguish, lost

capacity for the enjoyment of life, loss of earnings, loss of earning capacity, medical and hospital expenses, and loss of bodily functions.

WHEREFORE, Plaintiff, Lueron Dixon, demands judgment against Defendants Lauris Boulanger, Inc., Dania Distribution Centre, Ltd., Dania Distribution Centre Condominium Association, Inc., and Dania Distribution Centre, Inc., in an amount in excess of the jurisdictional limits of this Court, together with costs and such other and further relief as the Court may deem just and proper.

## COUNT 3 - NUISANCE
### (Lueron Dixon)

62.     Plaintiff Lueron Dixon repeats, realleges and incorporates by reference paragraphs 1 through 44 of the Complaint as though full set forth herein.

63.     Plaintiff asserts claims for damages as a result of private nuisances

64.     Defendants' acts and decisions regarding the removal, transportation, use, and handling of contaminated or potentially contaminated or hazardous soil and groundwater, and the resulting discharge, emission, seeping, release or otherwise of toxic particles and contamination of land and water were unreasonable and preventable.

65.     Defendants' acts and decisions regarding the removal, transportation, use, and handling of contaminated or potentially contaminated or hazardous soil and groundwater caused and are the proximate and foreseeable result of damage to the Plaintiff, including but not limited to extended or repeated exposure to hazardous materials and chemicals and injury in the form of damages to property.

66.     The Defendants' intentional conduct as described above constitutes numerous

actionable nuisances because it has unreasonably interfered with the Plaintiff's use and enjoyment of her property located at 1301 W. Dania Beach Boulevard, Dania, FL 33004.

67.    As a direct an proximate result of the Defendants' wrongful creation of private nuisances, Plaintiff, who was the property owner in the neighborhood surrounding the Dania Distribution Center property, is entitled to recover monetary damages for the loss of the use and enjoyment of the property, and for the reduction in the fair market value caused by the nuisances and seeks recovery for such losses against the Defendants.

68.    As a direct and proximate result of the Defendants' wrongful acts and omissions in creating private nuisances, the Plaintiff was exposed to excessive levels of hazardous and dangerous chemical over a number of years and on numerous occasions.

69.    As a direct and proximate result of these exposures to such hazardous and toxic chemicals, the Plaintiff suffered and in the future will continue to suffer damages, including but not limited to, the following: bodily injuries, pain and suffering, disability, mental anguish, lost capacity for the enjoyment of life, loss of earnings, loss of earning capacity, medical and hospital expenses, and loss of bodily functions.

WHEREFORE, Plaintiff, Lueron Dixon, demands judgment against Defendants Lauris Boulanger, Inc., Dania Distribution Centre, Ltd., Dania Distribution Centre Condominium Association, Inc., and Dania Distribution Centre, Inc., in an amount in excess of the jurisdictional limits of this Court, together with costs and such other and further relief as the Court may deem just and proper.

### COUNT 4 - TRESPASS
(Lueron Dixon)

**CLYNE & ASSOCIATES, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538
14

54 of 57

70.     Plaintiff Lueron Dixon repeats, realleges and incorporates by reference paragraphs 1 through 44 of the Complaint as though full set forth herein.

71.     Plaintiff asserts claims for monetary damages as a result of a trespass.

72.     Defendants interfered with Plaintiff's lawful possession of ownership of real property by starting a chain of events, the natural result of which was to cause toxic particles and matter to enter onto Plaintiff's property located at 1301 W. Dania Beach Boulevard, Dania, FL 33004.

73.     Defendants intended to perform the acts that resulted in the interference with the Plaintiff's right of possession and did not have permission, authority, or the right to do so; and;

74.     Defendants' intentional misconduct, as described above, in a series of similar but separate distinct incidences and occurrences are a direct and foreseeable cause of damage to Plaintiff's property, including but not limited to, exposure to hazardous materials as the result of emission, release, discharge, migration, seeping and transfer of hazardous toxic chemicals and materials on the property owned by Plaintiff.

75.     The physical invasion of Plaintiff's property by toxic chemicals and materials constitutes trespass to such property on each occasion when the invasion occurred.

76.     As a direct and proximate result of the Defendants' wrongful conduct in trespassing on the private property, the Plaintiff, who was the owner of property in residential neighborhood surrounding the Dania Distribution Center, has suffered injuries to her property and is entitled to recover monetary damages, including a reduction in fair market damages and prestige.

77.     As a direct and proximate result of the Defendant' trespass, the Plaintiff has been exposed to elevated levels of hazardous and toxic chemicals.

78.     As a direct and proximate result of exposure to such hazardous and toxic chemicals

the Plaintiff has suffered and in the future will continue to suffer damages, including but not limited to, the following: bodily injuries, pain and suffering, disability, mental anguish, lost capacity for the enjoyment of life, loss of earnings, loss of earning capacity, medical and hospital expenses, and loss of bodily functions.

WHEREFORE, Plaintiff, Lueron Dixon, demands judgment against Defendants Lauris Boulanger, Inc., Dania Distribution Centre, Ltd., Dania Distribution Centre Condominium Association, Inc., and Dania Distribution Centre, Inc., in an amount in excess of the jurisdictional limits of this Court, together with costs and such other and further relief as the Court may deem just and proper.

### COUNT 5 - NEGLIGENCE
(Deborah Wallace)

79.     Plaintiff Deborah Wallace, repeats, realleges and incorporates by reference paragraphs 1 through 44 of the Complaint as if fully set forth herein.

80.     All of the Defendants owed the Plaintiff a duty to exercise reasonable care in not releasing, discharging, depositing, and/or transporting toxic chemicals that they knew or should have known could result in property damage and personal injury.

81.     In breaching their duty to exercise reasonable care, the Defendants were negligent in connection with numerous but distinct and separate incidences and occurrences over a period of years in at least, but not limited to, the following respects:

a.     In releasing, discharging, emitting or otherwise permitting extremely hazardous toxic chemicals from the soil and groundwater at the Dania Distribution Center into the residential neighborhoods surrounding the Dania

CLYNE & ASSOCIATES, P.A.
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538
16

56 of 57

%JS 44   (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

Essex Insurance Company

**(b)** County of Residence of First Listed Plaintiff   New Castle, Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Litchfield Cavo, LLP
600 Corporate Drive, Suite 600
Fort Lauderdale, FL 33334
(54) 689-3004

## DEFENDANTS

Lueron Dixon, et al.

County of Residence of First Listed Defendant   Broward County, Florida
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE   ☐ MONROE   ☑ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

0 : 09 CV 61755 : WPD

Snow

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO

JUDGE                     DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

This is a Petition for Declaratory Relief.  Diversity jurisdiction exists and is proper under 28 U.S.C. § 1332

LENGTH OF TRIAL via   2   days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   11/3/09

FOR OFFICE USE ONLY

AMOUNT _____   RECEIPT # 547948 _____ IFP