UNITES STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 09-61755-Civ-COOKE/BANDSTRA

ESSEX INSURANCE COMPANY,

    Plaintiff

vs.

LUERON DIXON, *et al.*,

    Defendants
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CASE is before me on Plaintiff Essex Insurance Company's ("Essex") Motion for Summary Judgment on its Amended Petition for Declaratory Relief. [ECF No. 23]. Essex's request for declaratory judgment is a derivative of an underlying state court action in which approximately 90 plaintiffs sued Defendants Lauris Boulanger, Inc., Dania Distribution Centre, Ltd., Dania Distribution Centre, Inc., and Dania Distribution Centre Condominium Association, Inc. (the "Dania Defendants"). [ECF No. 22]. The underlying action, *Lueron Dixon, et al. v. Lauris Boulanger et al.*, Case No.: 06-05393 CA 09 (the "*Dixon* lawsuit") has settled[1], and the issue now before me is whether there is a genuine issue of material fact that would preclude finding that Essex did not breach its contractual obligations when it failed to defend and indemnify the Dania Defendants in the *Dixon* lawsuit. I have reviewed the parties' arguments,

---

[1] The *Dixon* plaintiffs and the Dania Defendants settled for $19 million dollars as part of a Coblentz agreement. Pursuant to the Coblentz agreement, the *Dixon* plaintiffs have assumed the rights of the Dania Defendants to assert their claims against Essex for failure to defend the Dania Defendants in the *Dixon* lawsuit. *Dixon* plaintiff Deborah Wallace did not settle her claims against the Dania Defendants and proceeds in this action as a *pro se* defendant.

the record and the relevant legal authorities. For the following reasons, Essex's Motion for Summary Judgment is granted.

## I. BACKGROUND

In or about March of 2001, the Dania Defendants purchased approximately 15.5 acres of land adjacent to residential neighborhoods in Dania Beach, Florida (the "Dania Property" or "Property"). (Pl.'s Statement of Undis. Material Facts ¶ 3 [ECF No. 25]; Defs.' Statement of Undis. Material Facts ¶ 4-5 [ECF No. 27]). Prior to the purchase, the Dania Property was used for dredged sand fill and as a landfill for medical waste, petroleum products and various chemicals. (*Dixon* Second Amended Complaint (the "*Dixon* complaint") ¶11-12 [ECF No. 22; ECF No. 25 ¶ 4]). Groundwater assessments conducted in 2000 and 2001 revealed the presence of contaminants such as phenols, benzene, naphthalene, methane, hydrogen sulphide, ammonia, lead, diesel fuel and chlorinated solvents. [ECF No. 22 ¶¶ 23-24; ECF No. 25 ¶ 5]. Soil samples collected in late November of 2002 revealed that the property had elevated levels of copper, arsenic, barium, chromium, nickel and lead. [ECF No. 22 ¶¶ 17-18; ECF No. 25 ¶ 5; ECF No. 27 ¶ 9]. The levels of arsenic were 50% of the allowable levels for a commercial property but twice the allowable levels for residential property. [ECF No. 22 ¶ 19]. Large quantities of asbestos were also found on the Dania Property. [ECF No. 22 ¶ 34].

On May 1, 2002, Essex issued a Commercial General Liability Policy to Dania Distribution Centre, Ltd., effective from May 1, 2002 to November 1, 2002 (the "Policy"), which covered the Dania Property as vacant land. [ECF No. 25 ¶ 15; ECF No. 27 ¶ 29]. From the time the Dania Defendants purchased the Property in 2001, until the filing of the *Dixon* lawsuit, the Dania Defendants cleared the Property, prepared the Property for construction and developed the Property, causing pollutants to be dispersed and discharged into the surrounding areas. [ECF

No. 22 ¶ 15; ECF No. 25 ¶ 6; ECF No. 27 ¶ 8]. Actual construction on the Dania Property began sometime after the Dania Defendants applied for construction permits from the City of Dania Beach in September of 2003. [ECF No. 22 ¶ 13; ECF No. 27 ¶ 7]. Notwithstanding the known presence of toxic chemicals on the Property and in the local groundwater, the Dania Defendants admittedly failed to take any steps toward protecting the residents, surrounding properties or workers on the Property from contact with the hazardous pollutants. [ECF No. 27 ¶ 16].

### The *Dixon* Lawsuit

The *Dixon* plaintiffs, consisting of landowners neighboring the Dania Property and construction workers, pled causes of action in negligence, violation of the Florida Pollutant Discharge Prevention and Control Act, Fla. Stat. § 376.313, nuisance and trespass. [ECF No. 22 *passim*]. Each of the *Dixon* plaintiffs alleged, individually, that they suffered some form of bodily injury, property damage and/or the loss of use and enjoyment of their real property as a result of the dispersal of pollutants from the Dania Property. [*Id.*].

The 90 individual negligence counts allege that the Dania Defendants were negligent in (a) releasing, discharging, emitting or otherwise permitting extremely hazardous toxic chemicals from the soil and groundwater at the Property; (b) removing or transporting contaminated soil and groundwater from the Property; (c) failing to warn the *Dixon* plaintiffs of the toxic contamination and increased risk of personal injuries or property damage; (d) failing to promptly remedy the contamination and migration of toxic chemicals from the Property; (e) failing to warn the *Dixon* plaintiffs of the toxic contamination of the local groundwater; and/or (f) failing to remedy the contamination and migration of toxic chemicals into the local groundwater. [*Id.*].

In the 90 counts alleging violation of Fla. Stat. § 376.313, the *Dixon* plaintiffs claim they suffered physical damages as a result of the discharge of pollutants from the Dania Property.

[*Id.*].  The 21 nuisance counts claim that the removal, transportation and handling of contaminated soil and groundwater by the Dania Defendants created private nuisances that damaged the *Dixon* plaintiffs' residential property. [*Id.*].  The remaining 21 counts for trespass claim that the Dania Defendants intentionally engaged in actions that exposed the residential property to toxic chemicals and materials, which resulted in bodily injury. [*Id.*].

*The Essex Insurance Policy*

The Policy requires Essex to defend the Dania Defendants against claims asserted by third parties and obligates Essex to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [ECF No. 1, Ex. A].  The Policy defines bodily injury as "bodily injury, sickness or disease sustained by a person, including death." [*Id.*].  Property damage is defined as "physical injury to tangible property, including all resulting loss of use of the property" or "loss of use of tangible property that is not physically injured." [*Id.*].  Essex has no duty to defend claims that are not covered under the Policy including claims excluded by the Policy's pollution exclusion clause, claims excluded by the construction operations exclusion clause and claims arising out of the inhalation, ingestion, physical exposure to or absorption of asbestos, lead or silica dust. [*Id.*].

The Policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." [*Id.*].  The pollution exclusion clause expressly excludes coverage for all liability and expense arising out of or related to any form of pollution, intentional or otherwise, regardless of whether the Dania Defendants incurred any cost or expense. [*Id.*].  The pollution exclusion clause is applicable to:

> any litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal,

seepage, migration, release, escape or placement of pollutants, environmental impairments, contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

The construction operations exclusion clause excludes coverage for bodily injury, property damages, personal injury, advertising injury or any other injury loss or damage arising out of or caused by construction operations on the Dania Property. [*Id.*]. "Construction operations" are not defined under the Policy.

Essex refused to defend the Dania Defendants in the *Dixon* lawsuit, declined to participate in settlement discussions and has denied coverage for the settlement the Dania Defendants entered into with the *Dixon* plaintiffs.  Essex now asks this Court to declare that it has no duty to defend or indemnify the Dania Defendants in the underlying action due to the Policy's pollution exclusion clause and the construction operations exclusion clause. (Pl.'s Mot. for Summ. J. [ECF Nos. 23 & 24]).  The Dania Defendants argue that the exclusions do not apply because the negligence, nuisance and trespass claims did not arise from the discharge of pollutants and actual "construction" did not begin until September 2003, almost one full year after the Policy terminated. (Defs.' Resp. in Opp. to Pl.'s Mot. for Summ. J. [ECF Nos. 28 &29]). On September 14, 2010, the Dania Defendants filed a Counterclaim against Essex for bad faith and breach of contract in connection with Essex's failure to defend and indemnify the Dania Defendants in the *Dixon* lawsuit.  [ECF No. 93].

## *II. LEGAL STANDARD*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the

district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has met its burden the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.*

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (U.S. 1986) (quoting Fed. R. Civ. P. 56(e)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). The court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). However, conclusory allegations, unsupported by specific evidence, will be insufficient to establish a genuine issue of material fact to defeat a motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

### *III. ANALYSIS*

An insurer's duty to defend "depends solely on the allegations in the complaint filed against the insured." *Trizec Properties, Inc, v. Biltmore Const. Co, Inc.* 767 F.2d 810, 811 (11th Cir. 1985). The duty to defend arises when the complaint alleges facts that "fairly and potentially bring the suit within policy coverage." *Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993). If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured. *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580-

81 (11th Cir. 1995). Where "the alleged facts and legal theories do not fall within a policy's coverage, no duty to defend arises." *Id.* at 1584. An insurer has no duty to indemnify when it has no duty to defend the insured. *See Spencer v. Assurance Co. of America*, 39 F.3d 1146 (11th Cir. 1994).

**The Pollution Exclusion Clause**

"When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (citations omitted). Essex argues that it has no duty to defend or indemnify the Dania Defendants because the injuries and damages alleged in the *Dixon* complaint are barred by the Policy's pollution exclusion clause. The Dania Defendants argue that the *Dixon* plaintiffs suffered injury and damage as a result of odor, noise, dust, negligent hiring, negligence per se and negligence on the part of the contractor. The Dania Defendants further claim that failing to define the terms "odor," "noise" or "dust" renders the Policy ambiguous because the terms may potentially fall outside the pollution exclusion. When an insurance policy is considered "ambiguous," and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). The question of whether the Policy's pollution exclusion clause applies to the facts alleged in the *Dixon* complaint does not create an issue of ambiguity. *See Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135 (Fla. 1998). Upon a thorough review of the Policy and the *Dixon* complaint, I find no ambiguity within the Policy or the application of the pollution exclusion.

Insurance contracts are to be construed according to the plain language of the policies as bargained for by the parties. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing *Auto-Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000)). Courts look at the insurance policy as a whole and give every provision its "full meaning and operative effect." *Hyman v. Nationwide Mut. Fire Ins. Co.,* 304 F.3d 1179, 1186 (11th Cir. 2002); *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So.2d 528, 537 (Fla. 2005) ("the language of the policy is the most important factor"). The Policy's pollution exclusion clause applies to bodily injury or property damage *arising out of* the discharge, dispersal or escape of pollutants. The phrase "arising out of" is not ambiguous and should be interpreted broadly. *James River Ins. Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008). "[A]rising out of is broader in meaning than the term caused by and means originating from, having its origin in, growing out of, flowing from, incident to or having connection with… there must be some casual connection, or relationship that is more than a mere coincidence but proximate cause is not required." *Id.* (internal citations omitted).

The *Dixon* plaintiffs allege that they observed a sewage odor and complained to local authorities regarding the excessive dust, noise and damage that the construction and discharge of pollutants were causing to their health and homes. The actual injuries and damages complained of were caused by the discharge, transportation, contamination and migration of toxic chemicals that were "pollutants" within the definition of the Policy. The 462-page *Dixon* complaint does not allege negligent hiring, negligence per se or negligence on the part of the contractor. Indeed, the *Dixon* complaint does not allege a single claim unrelated to pollution that would preclude the application of Policy's pollution exclusion clause.

The Dania Defendants fail to raise a genuine issue of material fact that could fairly or potentially bring the *Dixon* lawsuit within coverage under the Policy. *See Lime Tree Village Community Club Ass'n, Inc.*, 980 F.2d at 1405. The pollution exclusion clause completely bars coverage of the allegations in the *Dixon* complaint. To the extent the *Dixon* plaintiffs suffered injuries from exposure to asbestos, lead or silica dust, those claims are also barred under the Policy. Essex had no duty to defend or indemnify the Dania Defendants in the *Dixon* lawsuit. Therefore, summary judgment is appropriate.

**The Construction Operations Exclusion Clause**

The *Dixon* complaint alleges that construction operations at the Dania Property also contributed to the discharge or dispersal of pollutants. Notwithstanding the absolute application of the pollution exclusion to the facts at issue, Essex argues that any such injuries or damages are also barred by the Policy's construction operations exclusion clause. The Dania Defendants argue that the construction operations exclusion is inapplicable because actual construction did not commence on the Dania Property until after the Policy terminated. Because I find that the pollution exclusion clause completely bars coverage of the *Dixon* lawsuit, I find no need to address the application of the construction operations exclusion.

### IV.  CONCLUSION

For the reasons set forth above, I **ORDER and ADJUDGE** as follows:

1. Essex's Motion for Summary Judgment is **GRANTED**.

2. The Dania Defendants' Counterclaim against Essex [ECF No. 93] is **DISMISSED** *sua sponte* for failure to state a case or controversy.

3. The Clerk shall **CLOSE** this case.

4. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, at Miami, Florida, this 21st day of September 2010.

_____
MARCIA G. COOKE
United States District Judge

Copies furnies to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of Record*